[Crim. No. 1432. First Appellate District, Division One.—November 21, 1927.]

In the Matter of the Application of H. W. SCOTT for a Writ of Habeas Corpus.

Frank P. Webster and Keith Ferguson for Petitioner.

Earl Warren, District Attorney, and R. H. Chamberlain, Jr., and Stanley C. Smallwood, Deputies District Attorney, for Respondent.

TYLER, P. J.—Application for a writ of *habeas corpus.* The petition recites that applicant is restrained of his liberty by the sheriff of Alameda County. That said restraint is illegal in this, that petitioner has been committed on a criminal charge of grand larceny of an automobile without reasonable or probable cause therefor, as the evidence of the prosecuting witness taken at the preliminary examination shows that she voluntarily delivered title to and possession of the automobile to petitioner. The return

of the sheriff recites that petitioner was received by him into custody by virtue of a commitment issued out of the police court of the city of Oakland charging grand larceny by trick and device. That thereafter and on September 7, 1927, the district attorney of Alameda County filed an information charging petitioner with the commission of grand theft, based upon the same transaction shown at the preliminary examination; that on the following day, September 8, 1927, the superior court in and for Alameda County issued a writ of *habeas corpus* on behalf of petitioner, returnable September 12th and on said day, after hearing, discharged the writ. That on September 12, 1927, petitioner was duly arraigned on the information above mentioned and plead not guilty. The case was set for trial for September 26, 1927, by consent. Prior thereto, on September 23d, petitioner filed the present application in this court. Pending the hearing thereof trial was had which resulted in conviction. The facts elicited at the preliminary examination show that petitioner in May, 1927, bought eighty acres of land from the Central Pacific Railway Company. This land, which was unimproved, was situated in the county of Butte and according to the testimony of the assessor of the county it was assessed for $2.50 per acre. After the purchase of the land, petitioner, with one John J. Martin, who was charged with the same offense, appeared at the office of a title insurance company in Oroville and inquired for and procured insurance of title upon the same. At that time petitioner stated that he was going to sell the property and take back certain trust deeds thereon, the sale to be made to Martin, who was introduced as Mr. Clark. Thereafter advertisements appeared in an Oakland newspaper wherein petitioner announced that he was willing to trade or exchange certain trust deeds for second-hand automobiles. In answer to these advertisements, the complaining witness, Mrs. Cumbers, telephoned petitioner at his apartment in Oakland and made an appointment to see him. A meeting of the parties was had, at which time petitioner informed Mrs. Cumbers that he had sold a ten-acre tract in Butte County to a man named Clark for $2,500, and had taken back a promissory note and trust deed from Clark for $1,350. This land was a portion of the tract above referred to. He represented that the

trust deed was a first lien upon the land which was worth $3,000; that it was improved with a bungalow and other buildings and was planted to fig trees which were four years old. After some negotiations, Mrs. Cumbers, relying upon these representations as to the land, traded her Dodge sedan automobile to petitioner for the note and trust deed which he assigned to her. During the negotiations, and before the transaction was consummated, petitioner referred Mrs. Cumbers to a "Mr. Martin," who, petitioner stated, could be found at the Key Route Inn, in Oakland, and petitioner also stated that Martin had seen the land and would verify his statements with reference to it. The person to whom Mrs. Cumbers was referred was John J. Martin, jointly accused with petitioner. Mrs. Cumbers endeavored to get in touch with Martin, but without success. A witness, Snyder, testified to a similar transaction had with petitioner Scott, during the course of which transaction Scott made the same representations. Snyder visited Martin at the Key Route Inn and during the course of the conversation had between the parties Martin informed Snyder that Scott owned property in Los Angeles and was worth from seventy-five to eighty thousand dollars and that if Snyder made a trade with Scott to have him indorse the note and he would cash it for a ten per cent discount. Martin further stated that he was familiar with the land in Butte County and that it was valuable. It further appeared in evidence that there were no buildings upon the land, nor were there any fig trees, or any improvements whatsoever. Petitioners Scott and Martin were identified as being the parties who acknowledged the notes and deeds of trust transferred to Snyder and Mrs. Cumbers. It was also shown that Martin had signed and acknowledged these notes and trust deeds as James Clark. Other testimony was to the effect that the value of Mrs. Cumbers' automobile was between $950 and $1,000 and that it was accepted by petitioner upon that value. At the close of this testimony the committing magistrate, as above stated, held petitioner to answer for the crime of grand larceny by trick and device. It seems to be conceded that the evidence fails to show that petitioner was guilty of grand larceny and should have been held for the crime of fraudulently obtaining property by false pretenses. The commitment was dated August 24, 1927.

Prior thereto and on July 29, 1927, the statute defining the crime of grand theft (Pen. Code, sec. 484 [Stats. 1927, p. 1046]) went into effect. This statute merged into the crime of grand theft the offenses which were formerly known under the names of larceny, embezzlement, and obtaining money by false pretenses. Section 487 of the Penal Code [Stats. 1927, p. 1047], which took effect on the same day, defines grand theft as being "1. Where the property taken is of a value exceeding Two Hundred Dollars. . . . " It was under these circumstances that the district attorney filed the information against petitioner for grand theft.

It is here contended that petitioner should have been held, if at all, for the crime of fraudulently obtaining property by false pretenses as the testimony clearly shows that he was not guilty of the crime of larceny. It is further claimed that his trial was a nullity for the reason that it occurred after the *ex parte* writ of *habeas corpus* issued out of this court, as such writ acted as a *supersedeas;* and, finally, that the statute defining the crime of grand theft, under which petitioner was prosecuted is *ex post facto* as to the crime charged as it occurred prior to the taking effect of said statute. It is respondent's contention that after the rendition of a verdict of guilty the sufficiency of the evidence before the committing magistrate is not open to inquiry by means of the writ of *habeas corpus;* that the verdict rendered against petitioner is a valid one and the statute under which he was convicted is not *ex post facto,* it being procedural merely; that the trial court was not deprived of jurisdiction to try petitioner by reason of the issuance of the writ of *habeas corpus* out of this court. It is further contended that the objection that there was no reasonable or probable cause for holding petitioner to answer has been waived, for the reason that no objection was made to the information by way of demurrer, or motion to set aside. We do not deem a discussion of these various questions or the manner in which they may be taken advantage of, to be necessary, as we are of the opinion that we are here only concerned with what transpired up to the time the commitment was made to the sheriff.

There can be no question but that the preliminary examination discloses a clear case of obtaining property by false pretenses. Every element of this crime is shown.

64

The prosecution proved the making of the false pretenses, their falsity, the obtaining of the property, the reliance of the victim upon those representations, which induced her to part with her property, the intent to defraud, and the conspiracy between Scott and Martin. The error of the committing magistrate was merely in the designation of the offense upon which petitioner was held to answer. ■ In *Ex parte Severin*, 188 Cal. 348 [205 Pac. 101], it is held that it is never the duty of the court to discharge a petitioner on *habeas corpus* where it appears that, notwithstanding defects in the form of the charge against him, he is probably guilty of a criminal offense. In that case the petitioner had been held to answer to the superior court on a charge of embezzlement. The evidence taken at the preliminary examination, so the supreme court held, could not sustain a commitment for that crime, but as was said "The evidence shows probable cause to believe that the petitioner is guilty of either one or the other of three distinct crimes; (1) Larceny by trick and device; (2) Embezzlement of money obtained by trick and device, or (3) Obtaining money under false pretenses." The language of the late Justice Beatty in *Ex parte Nicholas*, 91 Cal. 643 [28 Pac. 48], is there quoted as follows: "He has been examined upon a charge which the committing magistrate has denominated larceny, but it may well be that the depositions prove embezzlement. It not infrequently happens that the facts of a particular case leave it extremely doubtful under which definition the offense falls—that of larceny or embezzlement; and if the committing magistrate should give it a wrong designation in his order of commitment that would not prevent the district attorney from charging it correctly in the information." The petitioner was accordingly remanded. The instant case presents the identical situation. (See, also, *In re Moore*, 70 Cal. App. 483 [233 Pac. 805].)

The writ is discharged and the petitioner remanded.

Campbell, J., *pro tem.*, and Cashin, J., concurred.