[Crim. No. 1193. Second Appellate District, Division Two.— December 31, 1924.]

In the Matter of the Application of FRANK MOORE for a Writ of Habeas Corpus.

[1] CRIMINAL LAW — HABEAS CORPUS — PETITIONER HELD TO ANSWER FOR UNLAWFUL SALE OF INTOXICATING LIQUOR—PROBABLE CAUSE— EVIDENCE.—In this *habeas corpus* proceeding to secure petitioner's discharge from custody upon the ground that the order of a committing magistrate holding him to answer upon a charge of selling intoxicating liquor was made without reasonable or probable cause, the evidence suffices to show probable cause for believing petitioner guilty of possessing intoxicating liquor unlawfully.

[2] ID.—INTOXICATING LIQUOR—POSSESSION—VOLSTEAD ACT—WRIGHT ACT.—Possession of intoxicating liquor, except as authorized by the Volstead Act, is one of the acts which the Wright Act, by its adoption of the "penal provisions" of the federal statute, denounces as a criminal offense.

[3] ID. — EVIDENCE—PROBABLE CAUSE—HABEAS CORPUS.—Where the evidence before the committing magistrate shows probable cause to believe the accused guilty of any criminal offense, though it be an offense other than the one for which he was held to answer, it is not proper to discharge him upon *habeas corpus* until the proper authorities have had an opportunity to cause the correct charge to be preferred against him.

[4] ID.—PETITIONER HELD TO ANSWER FOR UNLAWFUL SALE—POSSESSION—EVIDENCE—HABEAS CORPUS.—In such *habeas corpus* proceeding, if it be assumed that the evidence fails to establish probable cause for believing petitioner guilty of the crime of selling liquor unlawfully, he nevertheless should be held in custody until such

---

1.  See 12 R. C. L. 1188; 13 Cal. Jur. 227.

time as the authorities may have an opportunity to proceed against him for unlawfully having the liquor in his possession.

[5] Id.—Entrapment — Intent—Evidence.—In such proceeding, the contention of petitioner that if he committed any offense he was inveigled into it by "investigators," who paid him the money with which to purchase the liquor, cannot be sustained where the evidence before the committing magistrate was sufficient to warrant the inference that petitioner was not only willing to comply with the request of the "investigators" that he procure the liquor, but was voluntarily and intentionally carrying out a criminal purpose of his own.

[6] Id. — Intent—Evidence.—It would be violative of sound public policy and repugnant to good morals to uphold the conviction of a person who, being entirely innocent of any intention to commit a crime, was inveigled into its commission by an officer of the law or by a private detective hired for that purpose by some self-constituted guardian of the public morals.

---

(1) 29 C. J., p. 167, n. 72.. (2) 33 C. J., p. 585, n. 9 New. (3) 29 C. J., p. 174, n. 35. (4) 29 C. J., p. 174, n. 35. (5) 16 C. J., p. 89, n. 48. (6) 16 C. J., p. 89, n. 48, p. 90, n. 60, p. 91, n. 63, 64.

PROCEEDING on Habeas Corpus to secure release from custody on charge of unlawful sale of intoxicating liquor. Writ denied.

The facts are stated in the opinion of the court.

Fred Forgy for Petitioner.

FINLAYSON, P. J.—This is an application for a writ of *habeas corpus* to secure the release of petitioner from detention after a preliminary examination in the justice's court upon a complaint charging him with the crime of selling intoxicating liquor in violation of what is generally known as the Wright Act [Stats. 1921, p. 79]. Petitioner was bound over to the superior court for Orange County, and he now seeks his discharge upon the ground that the order holding him to answer was made without reasonable or probable cause.

---

6. Inducement to commit a crime with view to prosecution as defense to such prosecution, notes, 17 Ann. Cas. 295; Ann. Cas. 1916C, 730; Ann. Cas. 1917D, 954.

Defense of entrapment to commit offense against liquor laws, note, 18 A. L. R. 162. See, also, 8 R. C. L. 127; 7 Cal. Jur. 884.

The testimony, as set out in the transcript, shows substantially the following: On November 13, 1924, the date of the alleged offense, the prosecuting witnesses, two men employed as "investigators" by an organization styling itself The Anti-Saloon League, met petitioner at a pool-hall in Huntington Beach. Two days previously these self-constituted "investigators," endeavoring to ascertain what places there were in Orange County where intoxicating liquors were being sold, sought an introduction to petitioner through an employee of the pool-hall. Upon that occasion the prosecuting witnesses asked petitioner if he could get them some liquor. Though he replied that he could get it for them, no attempt seems to have been made by petitioner at that time to procure any intoxicants for his newly-made acquaintances. Two days later, November 13, 1924, the date laid in the complaint filed against petitioner, he and the two "investigators" again met at the pool-room. Upon that occasion The Anti-Saloon League representatives asked petitioner if he could get them two bottles of whisky. In reply petitioner said that he did not know whether he could or not, but that he would try and see if he could get it. He told the "investigators" that the cost was three dollars a pint. Thereupon one of the men gave petitioner the sum of six dollars. Petitioner then left the pool-room, ostensibly for the purpose of getting the whisky. Returning in about ten minutes without any liquor, he asked one of the prosecuting witnesses if the latter had a "car." Upon receiving an answer in the affirmative, petitioner said that they would drive to a certain place. Guided by petitioner, he and one of the "investigators" drove to a hotel in Huntington Beach. There petitioner left the automobile, climbed a stairway leading to the hotel and was gone about five minutes, when he returned to the vehicle and said, "They haven't any either. This is the first time I ever went in there that I never got any liquor." Under petitioner's direction he and his companion then drove to a place in Huntington Beach known as "Brownings," but found no one there. They then parked the car at a place near by. Petitioner left the vehicle and was gone about fifteen minutes, when he returned and said, "No, they have got none." The two men then drove to an appointed place where they picked up the other "investigator." Still guided by petitioner, the three men then drove to a Mr.

Bickmore's place in Westminster. Petitioner told his two companions that he was quite sure that he could get some liquor at Bickmore's—that "he had never failed there." When they arrived at Bickmore's place petitioner left the car, went into Bickmore's home and in about fifteen minutes returned with two bottles of whisky, which he delivered to one of the prosecuting witnesses—the one from whom he had received the six dollars at the beginning of their quest.

Petitioner's contentions are: (1) That there is no evidence that he "sold" any whisky; that the testimony shows merely that he acted as the agent for the two "investigators" in the purchase of the liquor, and that under the Volstead Act, the "penal provisions" of which are adopted by the Wright Act, the purchase of liquor is not a crime—citing *Singer* v. *United States*, 278 Fed. 415, where the court says: "It is a crime to sell, but not a crime to purchase." (2) That if he committed any offense he was inveigled into it by the "investigators," who paid him the money with which to make the purchase.

If petitioner were entitled to a discharge merely upon a showing that the evidence is insufficient to make out a case of probable cause for believing him guilty of the specific crime for which he was held to answer—the crime of "selling" intoxicating liquor—we should entertain grave doubt as to the legality of his imprisonment. Many cases are to be found in the books to the effect that if a defendant is in no way interested on behalf of the seller, but simply acts as agent of the prosecutor, he is not guilty of making a sale. The Texas court of criminal appeals, having under consideration a state of facts somewhat similar to that presented here, held that the evidence disclosed a case of agency in the purchase of the liquor and not a "sale" by the accused. (*Givens* v. *State*, 49 Tex. Cr. 267 [91 S. W. 1090].) On the other hand, the supreme court of Georgia and the court of appeals of that state have held that if it be shown that the accused received money from another person, accompanied with a request to procure intoxicating liquor for the latter, and that shortly thereafter the accused delivered the liquor to the person by whom he was given the money, a *prima facie* case of a sale by the accused is made out, the *onus* is put upon him to explain where, how and from whom he received the liquor, and to escape criminal responsibility

for making a sale he must satisfy the jury that he did not induce the transaction, that he had no profits in it, that he was not an agent of the seller and that he acted solely as agent for the purchaser. (*Mack* v. *State,* 116 Ga. 546 [42 S. E. 776]; *Highsmith* v. *City of Waycross,* 7 Ga. App. 611 [67 S. E. 677]; *Plummer* v. *State,* 8 Ga. App. 379 [69 S. E. 28].)

[1] However, we do not find it necessary in this case to determine whether the evidence is sufficient to show probable cause for believing petitioner guilty of *selling* the liquor, for it unquestionably suffices to show probable cause for believing him guilty of *possessing* it unlawfully. "Possession," says the court in *Beyer* v. *United States,* 282 Fed. 226, "is a crime separate and distinct from the crime of the sale of liquor." In section 3 of the National Prohibition Law it is expressly declared that "no person shall . . . possess any intoxicating liquor except as authorized in this act." [2] Possession, therefore, except as authorized by the Volstead Act, is one of the acts which the Wright Act, by its adoption of the "penal provisions" of the federal statute, denounces as a criminal offense. [3] It is the established rule in this state that where the evidence before the committing magistrate shows probable cause to believe the accused guilty of *any* criminal offense, though it be an offense other than the one for which he was held to answer, it is not proper to discharge him upon *habeas corpus* until the proper authorities have had an opportunity to cause the correct charge to be preferred against him. (*Ex parte Keil,* 85 Cal. 309 [24 Pac. 742]; *Ex parte Nicholas,* 91 Cal. 640 [28 Pac. 47]; *In re Severin,* 188 Cal. 348 [205 Pac. 101].) [4] Therefore, if it be assumed that the evidence fails to establish probable cause for believing petitioner guilty of the crime of selling liquor unlawfully, he nevertheless should be held in custody until such time as the authorities may have an opportunity to proceed against him for unlawfully having the whisky in his possession.

[5] We do not find any merit in petitioner's second point. [6] It may be conceded that it would be violative of sound public policy and repugnant to good morals to uphold the conviction of a person who, being entirely innocent of any intention to commit a crime, was inveigled into its commission by an officer of the law or by a private detec-

tive hired for that purpose by some self-constituted guardian of the public morals. (*People* v. *Barkdoll,* 36 Cal. App. 25 [171 Pac. 440].) The rule that private detectives, as well as officers of the law, are not permitted to generate in the mind of a person who is wholly innocent of any criminal purpose the original intent to commit criminal acts which that person would not have committed or even have contemplated but for such inducement, and that convictions based upon such conduct will not be permitted to stand, is a wholesome and salutary rule and should be enforced. But it has no application to the facts of this case. Here the facts and circumstances surrounding the transactions testified to by the witnesses before the committing magistrate are abundantly sufficient to warrant the inference that petitioner not only was willing to comply with the request that he procure the whisky, but that he had a strong personal predilection to obtain the liquor for his new-found friends. His whole course of conduct, and particularly his statements to the "investigators," such, for example, as his statement that never before had he failed to secure liquor at one of the places visited by them, fully justifies the inference that his criminal purpose to procure the whisky from someone known to him to be a vendor of intoxicating liquors took ready root in his mind, not as one passively yielding to the inducements of another, but as a willing, active, and enthusiastic co-operator in the proposed plan to secure liquor, thinking, possibly, that thereby he might attain to "an airy scene of transitory joys." It may well be inferred, therefore, that petitioner, when complying with the request that he procure the drink, was but voluntarily and intentionally carrying out a criminal purpose of his own. The law of "entrapment" is stated in a recent Idaho case as follows: "Intrapment into the commission of a crime is not a defense in the sense of a justification or excuse for an act which otherwise would be criminal, but it resolves itself into a question of whether the accused committed any crime. If the criminal design originated with him, or if he intentionally committed or carried out his own criminal purpose, whether it originated with him or not, at the suggestion of another person, the fact that someone other than the accused facilitated the execution of the scheme, or that an officer appeared to co-operate with him, will not be a defense." (*State* v. *Mantis,* 32 Idaho,

724 [187 Pac. 268].)   It was held in *State* v. *Lucas,* 94 Mo.
App. 117 [67 S. W. 971], that the fact that the prosecuting
witnesses were furnished the money by citizens for the pur-
pose of buying whisky at a particular drugstore with a view
to prosecuting the seller, and that' each bought the whisky
with the money so furnished, is no defense.   See, also, *State*
v. *O'Brien,* 35 Mont. 482 [10 Ann. Cas. 1006, 90 Pac. 514].
The writ is denied.

Works, J., and Craig, J., concurred.