## UNITED STATES v. PERKINS et al.
### No. 10352.

United States Court of Appeals,
Seventh Circuit.

June 11, 1951.

50

Charles D. Snewind, Alfred E. Roth, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Irwin N. Cohen, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Defendants were prosecuted under an indictment containing four counts. In Count 1 each defendant was charged with unlawfully and willfully selling 8 capsules of heroin to Charles E. Sullivan, in violation of Sec. 2554(a), Title 26 U.S.C. Count 2 charged defendant Perkins with knowingly, willfully and unlawfully purchasing 8 capsules of heroin, in violation of Sec. 2553(a), Title 26 U.S.C. Count 3 charged defendant Perkins with fraudulently and knowingly receiving, concealing, buying and facilitating the transportation and concealment after importation of 8 capsules of heroin, knowing same to be imported into the United States in violation of Sec. 174, Title 21, U.S.C. Count 4 charged both defendants with conspiracy to commit offenses against the United States.

Defendants waived trial by jury. The court found defendant Perkins guilty on all four counts and defendant Riley guilty on Counts 1 and 4. Riley's sentence on Count 4, and Perkins' sentence on Counts 2, 3 and 4 were each made concurrent with the sentence which each defendant received on Count 1.

Defendant Riley admits that at the time and place charged he handed to Sullivan the 8 capsules of heroin described in the indictment, but urges entrapment as a defense. Defendant Perkins also urges entrapment, and in addition alleges insufficiency of the evidence against him and that the court erred in its rulings on evidence.

Considering first the defense of entrapment, Charles E. Sullivan and defendant Riley became acquainted when inmates at the House of Correction in Chicago; both had been narcotic addicts. Sullivan was released from confinement several weeks earlier than Riley, and came into contact with Treasury Enforcement Agent Perry, agreeing to become an informer.

The day after Riley was released from the House of Correction, Agent Perry gave Sullivan a $5 bill and five $1 bills to make a "buy." Sullivan had no other money on his person. Sullivan went to Jimmie's Palm Tavern in the city of Chicago and accidentally encountered Riley. Sullivan asked Riley if he knew a girl named Ora. Riley said he did but did not know where she could be located. Sullivan then asked Riley if he could "find any stuff" (referring to narcotics). Riley asked, "You back on it?" Sullivan answered that he was and that he wanted it for himself. A discussion followed as to price, and Riley informed Sullivan that if he had $15 he could get it for him at 75¢ a capsule. Sullivan told him he only had $10. Riley then said that he would see what he could do for him, and Sullivan and Riley walked across the street and met the defendant, Perkins, leaving the Morocco Hotel. Riley asked Sullivan to step aside and he then engaged in a conversation with Perkins, out of Sullivan's earshot. Perkins then stepped into

a nearby drugstore, purchased some whiskey, and a case of Coca-Colas, and he and Riley started toward his parked Packard automobile. As Sullivan started to walk toward the automobile, he overheard Perkins say to Riley that he (Sullivan) could not go along in the automobile because "he will put the heat on me." Sullivan then handed the $10 in currency to Riley, and Perkins, Riley and a third party, whose first name was Lucius, left in Perkins' car. Riley testified that Perkins took the whiskey and Coca-Colas into a place whose address is on Drexel Boulevard and that about half an hour later he returned to the automobile where Riley and Lucius were waiting for him, and they then returned to the Morocco Hotel, in front of which Sullivan had been standing awaiting their return. When Sullivan saw Riley, the latter nodded his head and Sullivan went to the parking lot where Perkins, Riley and Lucius left the automobile. Riley handed to Sullivan the 8 capsules of heroin enclosed in a small envelope. At that time defendant Perkins had gone into a restaurant. Agent Perry and several other Treasury agents who were nearby arrested Riley. Sullivan promptly turned over the package of heroin to Agent Perry. Defendant Perkins returned to his automobile where he likewise was arrested. He granted permission to the agents to search his automobile, and in the glove compartment they found a dozen envelopes identical in size, shape and appearance to the envelope which contained the heroin which Riley passed to Sullivan. When arrested, Perkins had a considerable amount of cash on his person, including a $5 bill and five $1 bills whose serial numbers coincided with the bills which Agent Perry had first given to Sullivan, and which Sullivan turned over to Riley.

In urging the defense of entrapment defendants say that the government did not have any reason to suspect that either defendant was engaged in selling narcotics and that it was the government informer who put the idea of committing the crime into Riley's mind. They insist that Sullivan induced Riley to make a sale of hero-

in, an act which he would not otherwise have done.

Defendants cite Sorrells v. United States, 287 U.S. 435, '53 S.Ct. 210, 77 L.Ed. 413, which is the first decision of the Supreme Court in which a reversal was based on entrapment, but the decision there actually turned on the error of the trial court in refusing to submit that issue to the jury. United States v. Cerone, 7 Cir., 150 F.2d 382, 384–385, certiorari denied 326 U.S. 756, 66 S.Ct. 98, 90 L.Ed. 454. The cases of Butts v. United States, 8 Cir., 273 F. 35, 18 A.L.R. 143, and Di Salvo v. United States, 8 Cir., 2 F.2d 222, also relied on by defendants herein fall within the pattern of the Sorrells case. In the case at bar the trial was to the court. It follows that cases turning on the failure of the court to submit the question of entrapment to the jury are not in point. We cannot reverse on the assumption the trial court did not consider whether defendants were entrapped, a defense which was vigorously urged at the trial. We must assume that the learned trial judge, with a record of wide trial experience, found that entrapment did not occur. We must decide, however, whether the evidence discloses the court erred in reaching such a conclusion.

Our courts have found it difficult to state an all-embracing rule which will define the course of conduct or provocation by government officers constituting entrapment. United States v. Chiarella, 2 Cir., 184 F.2d 903, 908. Warning has also been given that general language used in decisions dealing with entrapment should be viewed in the light of the facts to which it was applied. Zucker v. United States, 3 Cir., 288 F. 12, 16.

Most opinions involving the question of entrapment quote from Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. The court there quoted, apparently with approval, from Newman v. United States, 4 Cir., 299 F. 128, 131: "It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the com-

mission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor."

The separate opinion by Justice Roberts in the Sorrells case states, 287 U.S. at page 454, 53 S.Ct. at page 217: " * * * Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. * * * *"

In Goldstein v. United States, 7 Cir., 256 F. 813, 815, this court said: " * * * something more than the mere use of decoys or detectives by the government is necessary to raise an issue of estoppel. * * * There must be deception of such a character as to make it unconscionable for the government to press its case."

With more particular application to the facts in the case at bar, the following quotations from opinions of this court indicate the course we should follow. In Conway v. United States, 7 Cir., 1 F.2d 274, 276, we said: " * * * The details to which they themselves testified manifested such a familiarity with criminality and willingness to enter upon it, as would take this out of the operation of the general principle of entrapment as has been declared by this and other courts. * * * *"

In Price v. United States, 7 Cir., 56 F.2d 135, 136, we said: "It is apparent that appellants were ready and willing to commit the offense charged, and that they were not induced to commit it solely because of the request of Rose. To this request appellants, without hesitation, acceded. In other words, the criminal intent was present in their minds before given an opportunity to carry it out, and when given that opportunity, they immediately responded. Under such circumstances, no one can seriously contend that they were entrapped. * *"

In United States v. Ginsburg, 7 Cir., 96 F.2d 882, 885, certiorari denied 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396, we said: " * * * McGovern informed the narcotic agents that he would be able to purchase narcotics from appellant, and they in turn furnished him with the money with which he went to appellant's office and asked him to sell him dope which appellant did; all of which acts of the informer were under the direction and at the instigation of the narcotic agents who had agreed to see to it that the informer would be compensated by the Government. These facts do not constitute entrapment. * * *"

We find ourselves in accord with the opinion by Judge Learned Hand in United States v. Chiarella, supra, where he quotes from an earlier opinion of the court written by him, United States v. Becker, 2 Cir., 62 F.2d 1007: "We said then, * * * that it was not a defence if the accused was already engaged (1) in 'an existing course of similar criminal conduct'; (2) had 'already formed a design to commit the crime or similar crimes'; or (3) was willing to do so 'as evinced by ready complaisance.'" [184 F.2d 908.]

In the case at bar there was no testimony that Riley had previously engaged in the sale of narcotics, but he was (at least prior to his jail sentence) an addict and had embarked on conduct morally indistinguishable. United States v. Becker, supra, 62 F.2d at page 1009. When Riley was approached by Sullivan he quickly got down to the financial aspects of the transaction and then promptly contacted Perkins. Here we have "ready complaisance."

In our opinion Sullivan merely afforded Riley an opportunity to commit a crime which he was ready and willing to commit. We hold that Riley was not entrapped, and that, the evidence supporting a finding of guilty, the judgment of conviction as to Riley must be sustained.

Defendant Perkins' effort to avail himself of the defense of entrapment is entirely without merit. In the conferences and negotiations leading up to the sale of heroin, Sullivan did not have direct contact with Perkins. As we understand his contention, Perkins says that Riley was first entrapped and hence the entire transaction

was vitiated *ab initio,* and that the defense of entrapment is likewise available to him. The mere statement of the proposition condemns it even had we determined that the defense of entrapment was available to Riley.

■ On the merits we think that the evidence was sufficient to sustain the judgment of conviction against Perkins. It was Perkins whom Riley contacted after his conversation with Sullivan. The first conversation between Perkins and Riley was held in a manner so that Sullivan could not hear what was said. It was an allowable inference that Perkins knew an unlawful transaction was involved when he refused to allow Sullivan to ride in his automobile because "he will put the heat on me." The one $5 bill and the five $1 bills which Agent Perry gave to Sullivan to, make a purchase of narcotics were found in Perkins' pocket. Envelopes found in Perkins' automobile were identical in type with that containing the heroin delivered by Riley to Sullivan.

Perkins argues that direct testimony failed to establish that he sold the heroin. He accounts for the identified $5 and five $1 bills in his pocket by saying that the mysterious Lucius paid him a gambling debt of $25 when they were on the automobile trip to Drexel Boulevard. Although Perkins testified that the "gambling debt" had been outstanding for 90 days, and that he knew Lucius lived in the neighborhood, he stated he did not know Lucius' last name, address, telephone number, or his business. The story of the payment of $25 by Lucius to Perkins is highly improbable. If the transaction took place at all, it was in the automobile, and therefore in Riley's presence. Yet Riley was a witness at the trial, but no questions were asked of him on that subject.

The question of credibility was for the trial judge, who undoubtedly considered not only Perkins' interest in the outcome of the case but also his two convictions for felonies and a conviction for contributing to the delinquency of a minor, the offense consisting of selling narcotics to that minor.

Defendant Perkins does not point out any specific rulings on evidence as the basis of his assignment of error. We would be justified in considering that he had abandoned any such contention. However, upon reading all of the testimony in the record, we have noted such adverse rulings as were made by the trial court and we find none that were prejudicially erroneous.

In our opinion the evidence and the reasonable inferences to be drawn therefrom establish the guilt of defendant Perkins beyond a reasonable doubt.

The judgment in all respects is

Affirmed.