Olivera Hardy CRISP, and Preston Alligood, Appellants,

v.

UNITED STATES of America. Appellee.

No. 7675.

United States Court of Appeals Fourth Circuit.

Argued Oct. 6, 1958.

Decided Oct. 20, 1958.

Bryan Grimes, Washington, N. C., for appellant Olivera Hardy Crisp.

LeRoy Scott, Washington, D. C., for appellant Preston Alligood.

Julian T. Gaskill, U. S. Atty., Goldsboro, N. C. (Jane A. Parker, Asst. U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and HARRY E. WATKINS, District Judge.

PER CURIAM.

Appellants were convicted of three separate sales of narcotics in violation of 26 U.S.C. § 4705(a). Upon appeal they claim that the trial court erred in refusing to submit a defense of entrapment to the jury, the court holding there was no evidence to support such defense.

The evidence discloses that a Government agent, Montague, went to Washington, North Carolina, to conduct an investigation of suspected narcotics violations. Montague contacted one Roy Roosevelt Warren (a co-defendant here who pleaded guilty and has not appealed), whose name was previously known to Montague as being suspected of narcotics dealings. Warren made sales of morphine to Montague on August 6 and 13, 1957. Seeking to learn Warren's source of supply, Montague asked Warren for more morphine on August 13 and Warren obtained 12 additional tablets for Montague from defendant Crisp. On November 7 and 26 additional sales of morphine were made by Crisp, through Warren as intermediary, to Montague. Crisp was arrested, indicted, tried and convicted on the last two sales.

Crisp does not deny the illegal sales, but urges that the Government, through Warren, entrapped her into violating the law. She testified that she had worked for Warren in his tobacco fields, and Warren owed her money. She said she had no thought of selling narcotics until Warren approached her and told her he was unable to pay her his debt, but that he had a man who would pay her $30 for morphine costing her $1 under her prescription, and that it was only at Warren's insistence that she obtained the narcotics and sold them. There is no evidence that Montague was present or knew of this conversation, or in any manner directed or even suggested from whom or in what manner Warren might supplement his supply of narcotics.

Accepting her story at full value, and looking at all the evidence in a light most favorable to the defendant Crisp, we agree with the court below that there is nothing justifying submission of an entrapment issue to the jury with regard to Crisp. Warren was not a Government agent, and did not know he was dealing with agents until he and Crisp were arrested together on November 26, at the conclusion of Crisp's last sale of morphine. Concerning Crisp, there is not the slightest evidence of entrapment, as that defense is defined in the landmark case of Sorells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413:

"* * * the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."

The Government furnished an opportunity for Crisp to commit the offense, through the agent standing ready to buy the illegal narcotics with official money, but the criminal intent did not originate with the Government.

There are other facts, however, with respect to the defendant Alligood, which we feel necessitate reversal of his case, and the granting to him of a new trial. There was considerable testimony by Alligood, which if believed by a jury under proper instructions on the law of entrapment, might well have established a defense in his case. It is undisputed that after Warren and Crisp were arrested, Crisp was put in jail while Warren accompanied Montague and another agent, Kelly, to Alligood's house in an effort to buy morphine from Alligood. At this point, Warren was no longer unwittingly giving assistance to the agents. No morphine was sold that night by Alligood, but the following day Montague and Kelly bought 12 tablets from Alligood. Alligood's defense is predicated upon his statement that he

was urged by Warren and by the two agents to sell them morphine because one of the men who turned out to be an agent was a dope addict who was sick and in need of narcotics. He testified that Montague repeatedly asked him to sell him some tablets, but he repeatedly refused to do so, and on one occasion told the agent "I got some but don't have them for sale"; that he never sold any narcotics in his life and it never occurred to him to do so. Alligood has a physical affliction, and has taken morphine from infancy under prescriptions from his doctor. Alligood states that he had morphine for his own use on the night of the 26th of November, and in this respect he is corroborated by his mother, but he refused to sell it, and it was only after insistence by the two agents that the officers obtained the tablets on November 27, whereupon he was arrested. The Government's evidence contradicts this testimony, but we feel that a clear issue of fact was raised concerning entrapment and that it was reversible error to refuse to submit such defense to the jury. See Ryles v. United States, 10 Cir., 1948, 172 F.2d 72, 74, a narcotics case in which the facts are quite similar where the court held the evidence was "susceptible to an inference of entrapment justifying submission of that issue to the jury." The Supreme Court remanded that case for a new trial, 336 U.S. 949, 69 S.Ct. 882, 93 L.Ed. 1104, see 183 F.2d 944 for a second opinion by the Tenth Circuit, to which certiorari was denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637.

■ The Government points to the fact that Alligood testified that he received no money and did not hand the morphine to the officers, but that the bottle of tablets was snatched from his hand by one of the officers and he was immediately arrested. Relying on Rodriguez v. United States, 5 Cir., 227 F.2d 912, 914, the Governmment urges here that this testimony precluded the court below from charging the jury on the issue of entrapment. We think the Rodriguez case can be distinguished. There

the court pointed out that the principal issue presented was whether there was evidence upon which the verdict of guilty might be based. Finding there was ample evidence to support a verdict of guilty, the court then turned to defendant's claim of entrapment and stated "The record here fails to sustain the defense of entrapment." Here no issue is raised as to the sufficiency of the evidence to sustain a conviction, and here we find ample evidence justifying submission to the jury of the issue of entrapment. We think it perfectly proper to allow a criminal defendant to submit to a jury alternative defenses. Here, the jury did not believe Alligood's testimony about the agents snatching the morphine from him, but found that he had made a sale of the morphine. We feel under all the evidence of this case that the jury was entitled to go further and determine whether that sale was made pursuant to Alligood's criminal intent or by entrapment.

The judgment of the District Court is affirmed as to the defendant Crisp, and is reversed and the case remanded for a new trial as to the defendant Alligood.

Affirmed in part, reversed in part.