**Earl JOHNSON, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 16890.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 16, 1962.

Decided Feb. 14, 1963.

Bastian, Circuit Judge, dissented.

Mr. Mark P. Schlefer, Washington, D. C. (appointed by this court), for appellant.

Mr. William H. Willcox, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Victor W. Caputy, Asst. U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and FAHY and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

The appeal is from a judgment of conviction of selling, possessing, and facilitating the concealment and sale of narcotics, in violation of 26 U.S.C. § 4705 (a) and § 4704(a) and 21 U.S.C. § 174. The testimony showed that an officer of the Narcotics Squad of the Metropolitan Police Department early one morning before daylight supplied six dollars from official funds to one Turner to purchase narcotics. The officer and Turner drove in the officer's car to a place where Turner left the car and shortly thereafter returned with appellant and two other persons, all of whom entered the car. Appellant told the officer to drive to a certain corner, which was done. Appellant left the car and presently returned and sat in the rear seat, with the officer and Turner in the front seat. Appellant told the officer to drive to another location. He then told Turner in the hearing of the officer that he was keeping one of the capsules for having made the purchase, and handed Turner a quantity of capsules, which Turner gave to the officer. They contained an opium alkaloid. Thus the conduct charged as criminal could be found to be attributable to the action of the officer (1) in supplying Government funds for the purchase of the narcotics, (2) through the direct channel of an intermediary to the accused, (3) allowing the accused after the purchase and in the presence of the officer to retain some of the narcotics, (4) the officer at all times providing transportation for the execution of the plan.

■ Counsel contends that in these circumstances appellant was entitled to a directed verdict of not guilty on the ground of entrapment. We disagree. The evidence did not establish entrapment as a matter of law. The jury could infer that appellant, rather than being induced, was predisposed to commit the crime and was merely afforded by the Government an opportunity to do so, in which event the defense of entrapment would fail. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. But appellant was entitled to have the question submitted to the jury for its decision under an appropriate instruction. Such an instruction was requested and denied. For this reason we shall grant a new trial.

Inducement of course may take different forms. Here the evidence does not show, as sometimes is the case, that personal importuning or coercive tactics were used by the officer to persuade appellant. We do have, however, the furnishing by the officer of Government money, itself a persuasive factor, to an intermediary acting for the officer in carrying out the transaction, with a "reward" to the accused of a part of its fruit. This is enough to raise a factual issue of official inducement for the jury to decide one way or the other. While the "reward" was taken after the purchase, the jury could infer from the previous circumstances that hope of reward played a part in the transaction.

■ It is of course inducement by an official which invokes the doctrine. The entrapment defense does not extend to inducement by a private citizen; yet it has found general application to cases where the officer acts through a private citizen, as in the case at bar.[1]

---

1. See Henderson v. United States, 237 F.2d 169, 61 A.L.R.2d 666 (5th Cir. 1956), holding that an instruction on entrapment should have been given even though the provocator was not a federal officer but a sometime deputy sheriff who coop-

An underlying policy of the doctrine, as revealed in the following statement of the Supreme Court, is to preserve respect for the law as enforced by the Government:

> "The defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct."

Sorrells v. United States, supra, 287 U.S. at 452, 53 S.Ct. at 216 and see Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The latter, like the present case, involved a federal narcotic offense, as did Hansford v. United States, 112 U.S.App.D.C. 359, 303 F.2d 219.

■■■ Although it participates in conduct so as to give rise to a claim of entrapment, the Government may successfully meet the claim by showing that it did not in fact induce the conduct because the accused was merely awaiting an opportunity to commit the offense, being predisposed to do so.[2] Sorrells v. United States; Sherman v. United States; Hansford v. United States, all supra. Thus, in the present case, the Government would have the right, on the evidence to which we have referred as raising an issue of entrapment, to argue to the jury that it did not show entrapment because, as could be inferred, it showed that appellant was predisposed and ready to commit the offense. In addition, in deciding to give the entrapment instruction, the court should afford the Government on request an opportunity to introduce other evidence it might have of predisposition or readiness on the part of the accused. In Hansford the trial court properly permitted the prosecutor to reopen its case for this purpose, although we held that the particular evidence then advanced was inadmissible.

Moreover, in this case still another avenue is open to the Government by which it may seek to meet the challenge of the entrapment defense. Defense counsel objected to the Government's ef-

---

erated with federal agents in bringing the appellant to trial for violation of federal liquor laws. We do not disagree with the dictum in that case to the effect that inducement of crime by private persons cannot amount to entrapment, but it should be pointed out that the cases there cited in support of the proposition—so far as they may be thought to resemble our case —with but one exception reveal a situation where the questioned activity had first been found or promoted by the third person *before* the officials became involved. The other case, Kott v. United States, 163 F.2d 984 (5th Cir. 1947), presented the question whether a verdict of acquittal should have been directed because of entrapment. The Court of Appeals held, as we do in the present case, that the question was one for the jury.

Furthermore, neither these authorities nor our dissenting brother would hold that a private person cannot be the medium for acts of inducement flowing from an officer. The dissenting opinion expressly recognizes that he may. What it fails to recognize we think is that something other than importuning by the officer may be sufficient to raise a factual question of inducement, to be answered by the trier of facts.

**2.** In Hansford we quoted the statement of Judge Learned Hand in United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), as follows:

> "[I]n such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it."

200 F.2d at 882–883.

Of course when the evidence of the prosecution itself, as in the present case, raises the issue of entrapment, that is, the issue of inducement, as we use that term, the accused himself need not assume the burden referred to in Judge Hand's number (1) above. Indeed for purposes of instructing the jury it is better not to speak in terms of the defendant having the burden. Whenever the defense is asserted on evidence which gives rise to a factual issue of inducement by the Government an instruction on entrapment should be given if requested, regardless of the source from which the evidence of such inducement arises.

fort to prove what Officer Heath said to Turner. This testimony when offered was excluded, perhaps correctly. But when the defense thereafter requested the entrapment instruction, which as we have said was warranted by the evidence which had been admitted, the testimony of Officer Heath as to what he said to Turner, to the extent it had a bearing upon the issue of entrapment, became admissible on that issue. Should the case be retried, and entrapment again be raised as a defense, the court may hear this testimony outside the presence of the jury and, if and to the extent it bears on entrapment, may then permit it to be given before the jury.

Two cases are referred to as contrary to our conclusion—United States v. Perkins, 190 F.2d 49 (7th Cir.), and Crisp v. United States, 262 F.2d 68 (4th Cir). In Perkins the trial was by a judge without a jury. On appeal it was held that the intermediary "merely afforded Riley [a defendant with Perkins] an opportunity to commit a crime which he was ready and willing to commit," and the court concluded that the trial judge must have considered the possibility of entrapment, which was vigorously pressed at trial. This is exactly the issue in our case which should have been resolved by the trier of the facts. As to the defendant Perkins the Court of Appeals rejected his claim that because the intermediary was entrapped therefore the entire transaction was vitiated *ab initio*, and the defense of entrapment was likewise available to him. This did not necessarily follow. Each claim of entrapment must stand on its own facts, including the evidence tending to show predisposition or its absence. In Crisp v. United States, supra, the court, in holding that an instruction on entrapment was not justified, did so upon the basis of evidence which seemed to cover all that occurred, from which the court was able to conclude that the criminal design did not originate with the officials but rather that they furnished an opportunity for Crisp to commit the offense through the

agent. We think the question as to the origin of the criminal design in our case was a factual one for the jury to decide. In so far as Crisp and Hester v. United States, 303 F.2d 47 (10th Cir. 1962) may be said to indicate a different approach from ours we respectfully disagree. We have also examined United States v. Gironda, 267 F.2d 312 (2d Cir. 1959), and United States v. Di Donna, 276 F.2d 956 (2d Cir. 1960), in neither of which were the facts similar to those in our case.

■ It is reasonable to characterize the evidence of entrapment in this case as not strong; yet we think it was not so weak as to be non-existent in the eyes of the law applicable to the subject. That is the basis for our decision. The Government is not precluded by the law of entrapment from using unusual means of ferreting out violations of the narcotic laws, difficult to discover; but in using these means it opens for jury determination a factual issue whether the accused was induced by the Government to engage in the condemned conduct or, on the contrary, availed himself of the opportunity to do what he was ready and predisposed to do. We think this issue may safely be left to the jury. In so holding in this case we do not extend Hansford. That case reviews the entrapment problem at some length,[3] but the decision turned upon the admissibility of certain evidence and the content of instructions given. In the present case our decision turns entirely upon refusal to give any instruction at all on entrapment.

Finally, we do not think the unavailability of Turner as a witness can affect the appellant adversely. Turner was the Government's intermediary in this case in so far as appellant is concerned, though Turner himself was indicted. Even though we should assume his evidence might aid the Government in its case against appellant, his absence cannot supply that evidence.

The refusal of the trial court to give the requested instruction constitutes

---

3. See discussion of Hansford in a Note, 51 Geo.L.J. 190 (1962).

error for which the case must be remanded for a new trial.

Appellant raises another contention which we need not consider since it was not raised below and may not recur at any retrial.

Reversed and remanded.

BASTIAN, Circuit Judge (dissenting).

To put this case in its proper perspective, a brief review of testimony in the District Court is necessary.

Officer Heath, a member of the Metropolitan Police Department working as an undercover agent on the narcotics squad, met one John L. Turner [indicted as a co-defendant with appellant] at 3:15 A.M. on March 25, 1961. What took place between Officer Heath and Turner at that time we do not know.[1] During the trial, the Government attempted to introduce testimony as to what took place at that meeting, but the court twice properly sustained defense counsel's objections that, as appellant was not present when the purported conversation took place, such testimony was hearsay and therefore inadmissible.[2] Heath then testified that he gave Turner six dollars and drove him to a restaurant; that, while he remained in the automobile, Turner entered the restaurant, emerging about five minutes later with the appellant Johnson and two other persons, and that, at appellant's suggestion, he drove the quartet to the 2500 block of Twelfth Street, N. W. Turner then turned over some money to appellant, who got out of the car and disappeared for an unstated length of time. Upon his return, Johnson got in the car, handed Turner a

quantity of capsules, and said that he was "keeping one for doing." Heath then drove to Fourteenth and Fairmont Streets, N. W., where appellant and his two companions left the car. Turner, who had remained in the automobile, then gave Heath three of the capsules he had received from Johnson. Those capsules contained heroin.

This is all the evidence that we have before us. At the conclusion of the Government's case, the defense rested.

There is no evidence that Officer Heath said anything to Johnson, yet we are asked to reverse Johnson's conviction on the ground that an instruction on entrapment should have been given. The trial court considered the request of defense counsel for such an instruction, but denied it with the following observation:

> "[T]he only thing that there is in this case at all is this statement by the Police officer that Turner went in this restaurant and that he had money from a Policeman to buy narcotics, but the defense objected to the conversation that the officer had with Turner and there is nothing that the defense has introduced which I could hinge an entrapment instruction on."

I must agree with the trial court. There is no evidence of inducement of appellant[3] except the use of police money, and that, standing alone, is not enough to justify the instruction on entrapment which defense counsel sought. The majority view that the use of the policeman's automobile, the acquiescence by the officer in the accused's retention of some of the narcotics, and the channeling of an intermediary to the accused provide

---

1. Turner, although indicted, has never been apprehended.

2. The Government tendered the following (at the bench): "I didn't go into the earlier conversation because Turner is a defendant. The early conversation was that Turner asked this officer to drive to this particular place to see a person by the name of—somebody, so they could get narcotics, and he asked the officer if he wanted some, and the officer told him he wanted four, and the officer gave him

$6. And that statement was made at that time when Turner got out of the car; then Turner gets out of the car and goes into the place and returns with Johnson, and when he returned with Johnson and two other people, Johnson then directs this police officer to a certain locality in search of narcotics."

3. We need not consider in this case whether the sum of money used to purchase the narcotics was so large that its use alone would justify an entrapment instruction.

a basis for the requested instruction is without merit.

If this court is prepared to say that providing an accused with a bus token is enough evidence that the criminal conduct is "the product of the creative activity of law enforcement officials" to warrant instruction on entrapment, then the use of the policeman's automobile might be a reason for reversing this case. Certainly the use of an automobile facilitates the commission of a crime; but it is no more inducement to the accused to commit a crime than supplying him with any other common convenience, such as a telephone with which to call an accomplice. Certainly this is not the sort of activity which *ensnares* the innocent and law-abiding into the commission of crime.

That the police allowed the accused to retain some of the narcotics seems to me totally irrelevant to the issue before us. If there were evidence that the police officer had told the accused that he might retain some of the narcotics as a "reward" for selling the illegal drugs, an entrapment instruction might have been proper, although we need not decide this. There is absolutely no such evidence before us.

Admittedly the direct channeling of an intermediary to the accused might provide a basis for the instruction, but there is no evidence of such direction, as there was, for example, in Hansford; [4] and without it, there is nothing to warrant the requested instruction. Certainly there is no evidence that the officer asked Turner to contact Johnson.

Although there exists a plethora of cases involving entrapment by government officials or government informants, there are few decisions involving entrapment of offenders by the police through the medium of unsuspecting private parties. Research has revealed only two cases involving the factual situation before us,[5] both of which reached a result contrary to the one reached in this case; and both of which, in my opinion, are sound.

Our search under Sorrells [6] and Sherman [7] is not for the "proper standard for the enforcement of the federal criminal law in the federal courts," but for something much more elusive. We must inquire whether "the criminal design originates with the officials of the Government" [8] or whether the criminal conduct is "the product of the creative activity of its own [law enforcement] officials."[9]

4. Hansford v. United States, 112 U.S.App. D.C. 359, 303 F.2d 219 (1962). There are at least two critical factors in the present case which distinguish it from Hansford: First, the evidence indicates that appellant here was approached and requested to sell the illegal drugs by his co-defendant, who was not an informant; and second, there is no evidence that the police attempted to induce this appellant to commit the crime through the medium of the unsuspecting Turner. These factors, in my opinion, not only distinguish this case from Hansford, but demonstrate that there was no inducement of appellant by the police, and should lead this court to a result different from that reached by the majority.

5. United States v. Perkins, 190 F.2d 49 (7th Cir. 1951); Crisp v. United States, 262 F.2d 68 (4th Cir. 1958). Although only two circuits have considered the exact problem before us, other circuits have upheld refusals by a trial court to instruct

on entrapment where there was more evidence of police inducement before them than we have here. See, e. g., United States v. Di Donna, 276 F.2d 956 (2d Cir. 1960), purchase of narcotics from defendant by policeman; Hester v. United States, 303 F.2d 47 (10th Cir. 1962), purchase of narcotics from defendant by a special employee of the police. See also United States v. Gironda, 267 F.2d 312 (2d Cir. 1959).

6. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

7. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

8. Sorrells v. United States, supra note 5, at 442, 53 S.Ct. at 212.

9. Id. at 451, 53 S.Ct. at 216. This is a question for the jury, of course, unless the facts establish entrapment as a matter of law or unless the evidence does not warrant submission to the jury.

I have always thought this so-called "genesis of intent" test adopted by the Supreme Court was based upon a sense of unfairness and injustice to the accused if he is convicted of an offense he would not have committed save for the importuning of a goverment official. I have also thought a basic requirement of that defense to be that the Government use some form of direct persuasion on the accused to urge him to commit the crime, else I do not see why it is unfair or unjust to convict him of the crime he admittedly has committed. In all the cases I have encountered in which entrapment has been urged successfully, there was evidence that the Government sought directly to *persuade* the accused to violate the law. That is why I consider sound the general proposition that "the doctrine of entrapment does not extend to acts of inducement on the part of a private citizen who is not an officer of the law." [10]

Of course, there are cases in which, although the police did not deal directly with the accused, entrapment is successfully offered as a defense. But all cases reveal a common characteristic, namely, the police, or someone consciously working for them, urging the accused to commit the offense.

In the latter instance, there are, on the one hand, cases in which the police work through willing accomplices. In such a situation, the informant who induces the commission of a crime stands in the same position as the police. [11] This is obviously sound, for he may have an interest in obtaining a conviction as does a police official; and to hold otherwise would offer the police too easy a path to circumvent the entire defense. In this category also, entrapment by private persons who occupy semi-official status in the scheme of law enforcement might offer the accused a defense. [12] On the other hand, there are the cases in which the police work through an unsuspecting third party in order to induce a particular defendant to commit an offense. [13] Here too we have the direct urging of a particular person by the police, albeit through the medium of an unsuspecting third party. Quite properly, the defense of entrapment is available in this situation.

In the case before us we have no evidence that the police in any way urged this appellant to commit the crime. The only evidence is that the police met his co-defendant and arranged for the purchase of narcotics. I cannot see how there was inducement of appellant on this evidence.

Furthermore, in the case before us, the predisposition of appellant seems to me completely irrelevant. Under the "genesis of intent" test of Sorrells and Sherman, the only pertinent consideration in the defense of entrapment would appear to be the predisposition of this appellant's co-defendant to commit the crime. For example, let us assume that the police used such methods of inducement on Johnson's co-defendant, Turner, that the latter would be entitled to acquittal as a matter of law, on the ground of entrapment. Surely, under present doctrine, we would have to conclude that the criminal conduct was "the product of the creative activity of law-enforcement officials," and that "the criminal design [originated] with the officials of the Government." In such a situation, Johnson, as well as Turner, would be entitled to acquittal as a matter of law.

Let us take another situation: If Turner had approached the police officer in this case and offered to sell him nar-

10. Henderson v. United States, 237 F.2d 169, at 175 (5th Cir. 1956).

11. Sherman v. United States, supra note 6, at 373–375, 78 S.Ct. at 821.

12. See, e. g., Ex parte Moore, 70 Cal.App. 483, 233 P. 805 (Dist.Ct.App.1924), 233 Pac. 805; People v. Lewis, 285 Ill.App. 171, 1 N.E.2d 696, aff'd, 365 Ill. 156, 6 N.E.2d 175 (1936).

13. United States v. Klosterman, 248 F.2d 191, 69 A.L.R.2d 1390 (3d Cir. 1957); United States ex rel. Hassel v. Mathues, 22 F.2d 979 (E.D.Pa.1927).

cotics, Turner should not be entitled to instructions on entrapment if the police accept the offer. Also, if Turner then contacts Johnson and purchases the illegal drugs, I cannot see how Johnson would be entitled to entrapment instructions, even if he was reluctant to make the sale. Certainly the criminal design in this instance would have originated with Turner, and not with the police.

These hypothetical situations may only demonstrate the inadequacy of the present formulation of the doctrine of entrapment but, until the Supreme Court changes the nature of the defense, we must accept that formulation.

The majority quotes Learned Hand's analysis of the defense of entrapment in Sherman v. United States with seeming approval; but the result in this case leads one to feel that, in fact, it has been rejected. Under Judge Hand's approach, the defendant should have the burden of proof of making out a *prima facie* case of inducement. Such a *prima facie* case has not been made out when the facts reveal only that government money has been used to make the purchase, unless we adopt a "but for" test—that is, that but for the actions of the police the particular crime would not have occurred. I believe, and I think the cases bear out this belief, that in order to make out a *prima facie* case there must be evidence that the police directly attempted to persuade the defendant, by appealing to his sympathy, by offering him a reward, or by any other means from which the jury might reasonably conclude that the police had overcome a resistance on the part of the defendant to commit the offense. Only then should the predisposition of the defendant become relevant.

The question before us is not from which source such evidence must come: the only question is whether such evidence exists. The use of a small amount of police money—and that is all the evidence before us—should not be enough

evidence to warrant jury consideration of the question of appellant's entrapment.

The majority seems to argue that they do but a small thing, since they are only giving the jury a chance to decide the issue. I submit that they do a very important thing, however, by changing the nature of the defense of entrapment and permitting juries to speculate on the issue of entrapment where there is insufficient evidence before them.

The factual situation before us presents a rather narrow question of law and calls for neither a disquisition on the law of entrapment nor an essay on the problems of enforcing narcotics laws. Yet some notice should be taken of the difficulties facing the police in their efforts to stamp out illegal drug traffic.

Drug traffic is of fairly widespread occurrence, engaged in by persons who frequently make a business out of crime. The commission of the offense is shrouded in secrecy. Above all, the initiative for enforcement cannot be left to private complaint, but must be undertaken by the local police officials. Such difficulties do not, of course, excuse police conduct tending to subvert the law-abiding impulses of an accused. Such difficulties do, on the other hand, explain why the police themselves must make some efforts to purchase illegal drugs and not wait until the crime has been committed before seeking to apprehend the criminal.

This court, in Hansford, took a step which I believe shackles the efforts of the police to curb the traffic in narcotics,[14] and that step should most certainly be the limit of our incursion. The extension of existing principles of the doctrine of entrapment here undertaken will compound the difficulties of the police, for we now offer the defense of entrapment in a situation quite outside the ambit of Sorrells, Sherman, or any theory of that defense with which I am acquainted.

14. I dissented along with Judge Miller in Hansford, and think it should be overruled; but, unless or until it is overruled, I am, of course, bound by it.