**UNITED STATES of America**

**v.**

**Jasper L. MAYO, a/k/a Calvin Daily, Appellant.**

**No. 73–1660.**

United States Court of Appeals, District of Columbia Circuit.

May 17, 1974.

John G. Gill, Jr., Washington, D. C. (appointed by this court), was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, Barry W. Levine and William D. Pease, Asst. U. S. Attys., were on the brief for appellee.

Before WRIGHT and MacKINNON, Circuit Judges, and DAVIES,* United States Senior District Judge for the District of North Dakota.

MacKINNON, Circuit Judge:

Appellant seeks reversal of his conviction under the National Firearms Act [1]

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The indictment charged:

On or about January 10, 1973, within the District of Columbia, JASPER L. MAYO, also known as CALVIN DAILY knowingly possessed a firearm, that is, a short-barreled shotgun, which had not been registered to him in the National Firearms Registration and Transfer Record as re-

for possession of an unregistered sawed-off shotgun on the basis that the trial judge erroneously rejected his claim of entrapment. We find the evidence insufficient to support such alleged defense and affirm the judgment of conviction.

I

About 3:30 P.M. on January 10, 1973, two Metropolitan Police officers on duty in a marked police automobile were approached by a young lady who stopped the officers and reported that she had just been raped by two men in a nearby apartment. She also told the policemen that one of the men had a sawed-off shotgun. The policemen then started to drive to the apartment with the young lady when she suddenly pointed out two men walking along the street as her two attackers.

The police, with three reinforcements, then approached the two suspects, and the young lady again identified the two as her attackers. At that point the policemen frisked the suspects and found a sawed-off shotgun concealed beneath appellant's three-quarter length coat. The parties stipulated that the gun was not registered as required by 26 U.S.C. §§ 5812(a) and 5841.[2] A so-called sawed-off shotgun is defined as a firearm for purposes of the National Firearms Act.[3]

At trial appellant admitted possession of the weapon and acknowledged knowing at the time that the gun was loaded and that it was illegal to possess or carry such a sawed-off shotgun (Tr. 64). He denied any knowledge that the statute required the registration of the transfer prior to possession. Appellant testified that he had bought the gun from the young lady only ten or fifteen

quired by Chapter 53, Title 26, United States Code; in violation of Sections 5861(d) and 5871, Title 26, United States Code.
(Violation of Title 26, U.S.Code, Section 5861(d))

2. 26 U.S.C. § 5812 provides:
5812. Transfers.
(a) Applications.—A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary or his delegate a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary or his delegate; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe; (5) the firearm is identified in the application form in such manner as the Secretary or his delegate may by regulations prescribe, and (6) the application form shows that the Secretary or his delegate has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the trans-

fer, receipt, or possession of the firearm would place the transferee in violation of law.
(b) Transfer of possession.—The transferee of a firearm shall not take possession of the firearm unless the Secretary or his delegate has approved the transfer and registration of the firearm to the transferee as required by subsection (a) of this section. (Aug. 16, 1954, c. 736, 68A Stat. 722; Oct. 22, 1968, P.L. 90–618, Title II, § 201, 82 Stat. 1228.)
26 U.S.C. § 5841(a) provides:
5841. Registration of Firearms.
(a) Central registry.—The Secretary or his delegate shall maintain a central registry of all firearms in the United States which are not in the possession or under the control of the United States. This registry shall be known as the National Firearms Registration and Transfer Record. The registry shall include—
(1) identification of the firearm;
(2) date of registration; and
(3) identification and address of person entitled to possession of the firearm.

3. 26 U.S.C. § 5845(a) provides:
For the purpose of this chapter—
(a) Firearm.—The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length
. . . .

minutes before his arrest. Appellant's companion (Streeter) corroborated his testimony and also acknowledged knowing that it was illegal to possess a sawed-off shotgun.

At trial by the court without a jury, by way of a defense, appellant attempted to argue that he was entrapped by the young lady and by operation of the provisions of the statute. This defense was rejected by the judge and appellant was convicted on one count of possession of an unregistered firearm (sawed-off shotgun) in violation of 26 U.S.C. §§ 5861(d) and 5871.[4]

## II

■ It is fundamental that a defense based on entrapment requires the "inducement by an official . . . . The entrapment defense does not extend to inducement by a private citizen . . . ."[5] If, however, a Government official uses a private citizen as an agent, and in such manner induces an otherwise unwilling person to commit an offense which that person would not have committed but for the inducement, then the defense will lie.[6]

Applying these principles to this case, we note that there is no evidence of any agency relationship between the young lady and the Government *prior* to the sale of the sawed-off shotgun. Even if we completely accept appellant's version of the facts there is no showing that any person associated with the Government directly or indirectly suggested, aided, abetted, planned, induced, counselled, approved or wilfully caused the sale to, or possession of, the gun by appellant.

■ We reject completely, as a conclusion unwarranted by the facts, appellant's argument that because the transferor (allegedly the young lady) was obligated by the statute to register the transfer of the firearm that such facts impliedly made her an agent of the Government for purposes of the entrapment defense. Under the statute, in registering the transfer, the transferor acts solely on his own behalf and not as an agent of the Government.

■ Even if the statute did constitute the transferor the agent of the Government, her authority as agent would be limited to *registering* the firearm and would not extend to acting directly contrary to her authority. This rule is particularly applicable where, as here, the act of the alleged agent would constitute a crime.[7] Had the Government engaged the young lady to procure the commission of the crime, the defense of entrapment would lie[8]; but where there

---

4. 26 U.S.C. § 5861(d) provides:
 It shall be unlawful for any person—
 (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . .
 Pub.L. 90–618, Title II, § 201, Oct. 22, 1968, 82 Stat. 1234.
 26 U.S.C. § 5871 provides:
 Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both, and shall become eligible for parole as the Board of Parole shall determine. (Oct. 22, 1968, P.L. 90–618, Title II, § 201, 82 Stat. 1234.)

5. Johnson v. United States, 115 U.S.App.D.C. 63, 64, 317 F.2d 127, 128 (1963); *see* United States v. Russell, 411 U.S. 423, 427 n. 4, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973);

Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

6. Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963).

7. *Cf.* M. J. Uline Co. v. Cashdan, 84 U.S. App.D.C. 58, 171 F.2d 132 (1948) (agent who exceeds the authority of his employment does not bind his principal); Inland Waterways Corp. v. Hardee, 69 App.D.C. 268, 275, 100 F.2d 678, 685 (1938) (agent who acts in excess of his authority acts on his own responsibility), rev'd on other grounds, 309 U.S. 517, 60 S.Ct. 646, 84 L. Ed. 901 (1940); Hirning v. Federal Reserve Bank, 52 F.2d 382, 387 (8th Cir. 1931); Vann v. Federal Reserve Bank, 47 F.2d 786 (E.D.Va.1929).

8. Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963).

is no showing that the agent provocateur was purposefully acting on behalf of the Government the defense does not obtain.[9] Here, it is unquestioned that the Government took no part in, and had no prior knowledge of, the transaction.

### III

 Appellant's argument, however, finally twists itself into a claim, in effect, that he was entrapped

> by this *system* set up by Congress and that [the young lady] violated the provisions of 26 U.S.C. § 5861(e) which forbid the transfer of an unregistered firearm.

Br. at 13 (emphasis added). In this respect, the essence of his claim is that his violation of the statute should be obviated because it rested in part on the failure of the transferor to comply with the statute by registering the firearm. However, the fact that the gun was not registered was well known to appellant since it would have been impossible to register the transfer in the fifteen minute interval between the transfer and his arrest. The statute prohibits *possession* of an unregistered firearm and the violation occurred here at the moment appellant assumed dominion over the gun.[10] When a purchaser of such a weapon takes possession immediately upon purchase, and without the statutorily required approval of the transfer and registration, his offense is complete.[11] That the transferor may also have violated the statute by failing to register the transfer, and that the result of her violation is a feature of his

offense, is no justification for his illegal act any more than the act of any aider or abettor [12] absolves any principal law violator. It is perfectly reasonable for Congress to require transferors to register the transfer of firearms and to prohibit transferees from possessing such weapons until they are registered.[13] The statute simply requires a purchaser (transferee) to defer taking possession of the weapon until the transaction is registered. This requirement is easily satisfied and does not constitute an illegal trap for the unwary.

 Appellant also claims as a defense that he did not possess sufficient knowledge of the registration requirements of the Act to support his conviction. However, even if the lack of scienter had been proved, it would not be a defense to the possession of the illegal firearm specified in this indictment. The statute here involved is one of a great many that regulates conduct and imposes criminal sanctions without requiring a common law *mens rea*. In a case involving the federal narcotics statute Chief Justice Taft noted

> that in the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment

---

9. *See* Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Brooke v. United States, 128 U.S.App.D.C. 19, 385 F.2d 279 (1967); Smith v. United States, 118 U.S.App.D.C. 38, 331 F.2d 784 (1964); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963).

10. 26 U.S.C. § 5812(b). *See* note 2 *supra*.

11. *Id.*

12. 18 U.S.C. § 2 provides:
 § 2. Principals
 (a) Whoever commits an offense against the United States or aids, abets, counsels,

commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 June 25, 1948, c. 645, 62 Stat. 684; Oct. 31, 1951, c. 655, § 17b, 65 Stat. 717.

13. 26 U.S.C. § 5812(b). *See* note 2 *supra*.

rather than the punishment of the crimes as in cases of *mala in se.* [Citing cases.]

United States v. Balint, 258 U.S. 250, 252, 42 S.Ct. 301, 66 L.Ed. 604 (1922). The quotation incorporated in the above excerpt is from Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 70, 30 S.Ct. 663, 54 L.Ed. 930 (1910), which rejected lack of scienter as a defense to a violation of a state statute prohibiting "casual and involuntary" timber trespass upon the principle that the statute " 'declare[d] a crime, irrespective of the actor's intent.' " *Id.* at 68.

The National Firearms Act, upon which the present indictment is based, was held in United States v. Freed, 401 U.S. 601, 607–610, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1973) to be within this group of regulatory statutes. In his majority opinion in *Freed,* Justice Douglas concluded that the Act is a regulatory measure enacted in the interest of public safety, that the type of offense it creates is closer to the Pure Food Act violations which was the subject of United States v. Dotterweich, 320 U.S. 277, 284, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (adulterated and misbranded drugs) than to the offenses in Morissette v. United States, 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (theft of Government property) and Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (felony registration), and that the offenses proscribed by the Act require no specific intent or knowledge. As with the grenade in *Freed,* a sawed-off shotgun is a highly dangerous weapon, the possession of which would rarely be an innocent act. The same may be said of the other weapons and devices covered by the Act, including machine guns, sawed-off rifles, bombs, poison gas, rockets, mines and other destructive devices.[14]

In any event, appellant admitted at trial that he knew it was illegal to possess and carry such weapon.[15]

We accordingly affirm the conviction.

Judgment accordingly.

14. 26 U.S.C. § 5845 (82 Stat. 1230).

15. Tr. at 64. Appellant also admitted knowing that the gun was loaded. *Id.*