UNITED STATES of America, Appellee,

v.

Ramon Elesvan DORTA, a/k/a
Raymond Dorchester,
Appellant.

UNITED STATES of America, Appellee,

v.

Luis German LAVERDE, Appellant.

UNITED STATES of America, Appellee,

v.

Donald Bruce KNIGHT, Appellant.

UNITED STATES of America, Appellee,

v.

Renn DRUM, Jr., Appellant.

Nos. 84–5291(L), 84–5294, 84–5295
and 84–5296.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1985.

Decided Feb. 21, 1986.

Norman B. Smith, Greensboro, N.C., for appellant Renn Drum, Jr.

A. Wayne Harrison, Greensboro, N.C., for appellant Donald Bruce Knight.

Michael Burnbaum, for appellant Luis German LaVerde.

(Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., Bronis & Portela, P.A.; Robert Kalter, P.A., Miami, Fla., on brief), for appellant Ramon Elesvan Dorta.

David B. Smith, Asst. U.S. Atty. (Kenneth W. McAllister, U.S. Atty.; Becky M. Strickland, Greensboro, N.C., on brief), for appellee.

Before WINTER, Chief Judge, SNEEDEN, Circuit Judge and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

SNEEDEN, Circuit Judge:

Appellants Dorta, LaVerde, Knight, and Drum were indicted for numerous drug related offenses arising out of an alleged cocaine distribution operation. They appeal their subsequent convictions [1] on numerous grounds. Finding no merit in appellants' contentions, we affirm.

## I.

On August 5, 1983, federal agents arrested Donald Jones and Susan Weeks at Atlantic Beach, North Carolina, and charged them with possession of cocaine. As part of an eventual plea bargaining agreement, Jones and Weeks agreed to testify against appellants.

The evidence introduced by the government at trial can be briefly summarized. The testimony by Jones, Weeks, and other witnesses implicated appellants Dorta, LaVerde, and Knight in a drug distribution operation dating from 1981. The distribution network involved cocaine pick-ups in Florida and deliveries in North and South Carolina. Their testimony also implicated Henry Warden (a co-defendant not involved in this appeal) as playing a key role in the drug distribution ring. Appellant Drum was Warden's attorney. Jones and Weeks testified that, after their arrest, Drum visited them in jail on Warden's behalf in order to arrange for the continuation of cocaine deliveries.

As part of their agreement with the government, Jones and Weeks pretended to continue their illegal drug activities after their release from jail. This effort, in which Jones and Weeks were, in effect, government agents, commenced sometime in November 1983. As a result of their cooperation, the government introduced additional evidence implicating Drum in the distribution conspiracy. Appellants were arrested on February 7, 1984.

## II.

The first issue we will discuss is Drum's assertion that the trial court committed reversible error by refusing to instruct the jury on the entrapment defense. Drum claims that considerable evidence was introduced which demonstrates that Weeks

---

1. A jury found Dorta guilty of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, five counts of using a telephone to carry on illegal drug activities in violation of 18 U.S.C. § 1952(a)(2), (a)(3), and five counts of possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). LaVerde was found guilty of one count of conspiracy to distribute cocaine and one count of using the telephone to carry on illegal drug activities. The jury found Knight guilty of one count of conspiracy to distribute cocaine, three counts of using the telephone to further illegal drug activities, and two counts of possession of cocaine with intent to distribute. Drum was convicted of conspiring to distribute cocaine.

induced Drum to join the drug conspiracy during the time she was acting as a government agent. Citing our decision in *United States v. Hunt*, 749 F.2d 1078 (4th Cir.1984), Drum asserts that the trial court was required to instruct the jury on entrapment.

However, we do not need to decide this issue because the record reveals that in his testimony before the jury, Drum unequivocably and repeatedly denied any involvement in the cocaine conspiracy. Thus, Drum is claiming in one breath that he did not commit the crime, and in the next that even if he did commit it, the government entrapped him.[2]

The vast majority of the circuit courts of appeals have adopted the rule that defendants may not testify that they did not commit the crime charged and also assert the entrapment defense. *See, e.g., United States v. Smith*, 757 F.2d 1161, 1167–69 (11th Cir.1985); *United States v. Liparota*, 735 F.2d 1044, 1048 (7th Cir.1984), *rev'd on other grounds*, ── U.S. ──, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); *United States v. Whitley*, 734 F.2d 1129, 1139 (6th Cir. 1984); *United States v. Mayo*, 705 F.2d 62, 72–73 (2nd Cir.1983); *United States v. Hill*, 655 F.2d 512, 514 (3rd Cir.1981), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *United States v. Annese*, 631 F.2d 1041, 1046–47 (1st Cir.1980); *Munroe v. United States*, 424 F.2d 243, 244 (10th Cir.1970) (en banc); *Ware v. United States*, 259 F.2d 442, 445 (8th Cir. 1958).[3] The primary rationale for this rule .is the unacceptable inconsistency that arises when a defendant both denies guilt and asserts entrapment. *See, e.g., United States v. Smith*, 757 F.2d at 1167–68; *Munroe v. United States*, 424 F.2d at 244.

This circuit's holdings on whether defendants may assert an entrapment defense inconsistent with their denial of committing the crime have been sparse and inconsistent. In *Nutter v. United States*, 289 F. 484, 485 (4th Cir.1923), this court took the position that a defendant may not succeed on a claim of entrapment when he has testified that he did not commit the crime.[4] In 1958 we took the opposite position in *Crisp v. United States*, 262 F.2d 68, 70 (4th Cir.1958). The opinion in *Crisp* does not cite or discuss *Nutter*, which another court had two years earlier interpreted to support the rule that the entrapment defense is not available when the defendant denies commission of the crime, *Henderson v. United States*, 237 F.2d 169, 172–73 (5th Cir.1956). Our research has failed to locate any Fourth Circuit opinion citing *Crisp* with approval on the issue in question here.

We must choose between our conflicting positions in *Crisp* and *Nutter*. We conclude that the better rule is that defendants are not entitled to a jury instruction on entrapment when they testify that they have not committed the crime charged. Not only is this the much more recent position of the overwhelming majority of other circuits, but more importantly, it is also in the interest of protecting the integ-

---

**2.** The reason for the district court's refusal to instruct the jury on entrapment is not entirely clear from the record. The government took the position at trial that an entrapment instruction should not be given in this case because it would be inconsistent with Drum's denial of wrongdoing. Accordingly, this inconsistency may have been the basis for the court's ruling.

**3.** The Fifth Circuit has recently adopted a hybrid position in which a testifying defendant may not deny that he has committed the acts charged and also claim entrapment, but the defendant may deny having criminal intent and still be entitled to assert the entrapment defense. *United States v. Henry*, 749 F.2d 203, 205 (5th Cir.1984) (en banc).

Only two circuits permit a defendant to deny all elements of the crime and still claim entrapment. *United States v. Kelly*, 748 F.2d 691, 701 n. 24 (D.C.Cir.1984); *United States v. Demma*, 523 F.2d 981, 982 (9th Cir.1975) (en banc).

**4.** As an alternative holding, the court's opinion in *Nutter* also relied on evidence of the defendant's predisposition to commit the crime. 289 F. at 485. We note, however, that other courts have interpreted *Nutter* to be consistent with the proposition that a defendant may not raise the entrapment defense when he has denied commission of the crime. *See, e.g., Henderson v. United States*, 237 F.2d 169, 172–73 (5th Cir. 1956).

rity and the truth-finding function of our criminal trials. "A criminal prosecution ... is not a game. It incorporates a moral content and an ultimate concern with guilt or innocence that are inconsistent with permitting the accused to say, 'I didn't do it, but if I did, the government tricked me into it.'" *United States v. Rey,* 706 F.2d 145, 147 (5th Cir.1983) (citation omitted). Accordingly, the trial court did not err in refusing Drum's request that the jury be instructed on entrapment.

### III.

We next address the claim by all the appellants that the trial court erred in refusing to allow their counsel to cross-examine the government's chief witness, Jones, concerning his belief as to what his maximum sentence could have been had he not cooperated with the government. Appellants contend that this ruling violated their constitutional right to confront adverse witnesses.

■ We recognize that a witness' understanding of what benefits he will receive as a result of his cooperation with the government is relevant and that the defendant is constitutionally entitled to explore this subject during cross-examination. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Hoover v. Maryland,* 714 F.2d 301 (4th Cir.1983). In *Hoover v. Maryland,* we held that a state trial court had unconstitutionally abridged the defendant's right to confront an adverse witness by a "sustained and effective refusal to permit inquiry into [the witness'] understanding of his bargain with the government." 714 F.2d at 306. In that case we concluded that the court's "interference"

with defense counsel's cross-examination on the bias issue was "pervasive." *Id.*[5]

A careful review of the record here reveals that appellants' counsel cross-examined Jones thoroughly, if not exhaustively, concerning his possible bias arising out of his agreement with the government. Appellants' counsel explored, for example, Jones' conviction for assaulting an FBI agent; his past criminal conduct, including the number of times he possessed cocaine; his understanding of the use immunity he was granted for his grand jury testimony; his understanding of the implications of his plea agreement; and his motivation for testifying. The trial court clearly did not impose "substantial limitations on the attempts of a defendant to undermine as biased a witness' testimony." *Hoover v. State of Maryland,* 714 F.2d at 305.

■ The "defendants in this case obtained from the witness a clear and complete statement of [the witness'] understanding of the plea bargain and of what benefits [the witness] would receive as a result." *United States v. Odom,* 736 F.2d 104, 108–09 (4th Cir.1984). Accordingly, we find no error in the trial court's ruling.[6]

### IV.

■ Appellants' remaining four contentions do not require detailed discussion. The first of these is that the trial court erred in allowing two government charts into evidence that appellants allege inaccurately and unfairly summarized telephone toll records. The lengthy telephone records had already been introduced into evidence, and the charts in question summarized the calls that were relevant to the government's case.

5. In *Hoover,* the trial judge had "indicated his belief that the letter granting immunity was the only evidence on the contents of the immunity agreement needed by the jury." 714 F.2d at 306.

6. The information which appellants claim that the district court improperly prevented them from eliciting—namely, Jones' understanding of the total possible sentence he would have faced for all the crimes he had committed that were covered by his plea agreement—was readily as-

certainable from Jones' testimony on cross-examination. Jones testified on cross-examination that he had possessed cocaine in North Carolina 50 to 100 times and that it was his understanding that fifteen years was the maximum sentence for each possession. Thus, while relevant, this evidence was properly excludable as repetitive. *Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110.

Rule 1006 of the Federal Rules of Evidence provides that the "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Since the charts in question here accurately summarized evidence already before the jury, we find no error in the district court's exercise of discretion in admitting the charts into evidence. *See United States v. Keltner,* 675 F.2d 602, 605–06 (4th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982).

■ The appellants also assert error in the trial court's refusal to give Appellant Drum's requested jury instructions on the elements of conspiracy. A careful comparison of the instructions on conspiracy given by the district court and those requested by Drum, however, reveals that the instructions given by the court, as a whole, included the substance of Drum's requested conspiracy charge and were "sufficiently precise to instruct the jury in the defendant's theory of defense." *United States v. Miller,* 658 F.2d 235, 237 (4th Cir.1981) (quoting *United States v. Mitchell,* 495 F.2d 285, 288 (4th Cir.1977)). We therefore find no error in the district court's charge to the jury on the elements of conspiracy.

■ Next, Appellant LaVerde claims that the trial court erred in refusing to suppress Diane Palas' in-court identification of him. After LaVerde's arrest, Palas was shown the pictures of the seven individuals arrested in this case. She identified the individuals in the pictures by name. LaVerde contends that the photo display was unduly suggestive in that he was the only foreigner in the pictures.

Even assuming, without deciding, that the photo display was unduly suggestive, we find no error because the totality of the circumstances in this case—including Palas' several previous encounters with LaVerde—"fall far short of the 'very substantial likelihood of irreparable misidentification' standard that is required." *United States v. Hughes,* 716 F.2d 234, 241 (4th Cir.1983) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)).

■ Finally, Appellant Knight urges that the district court erred in failing to grant his request for a jury instruction on the law of multiple conspiracies. The indictment alleged a single conspiracy existing from March 1981 until February 7, 1984. Knight's position is that the evidence establishes two conspiracies: a minor conspiracy, in which he is implicated, that began in March of 1981 and ended on August 5, 1983, and a separate conspiracy, in which he has not been implicated, that began on August 5, 1983, and continued until February 7, 1984. The bulk of the government's evidence concerned the period of time beginning in August 1983 and ending in February 1984.

Our initial inquiry is "whether the evidence, when viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), supports the jury's finding of a single conspiracy." *United States v. Hines,* 717 F.2d 1481, 1489 (4th Cir.1983). Applying this standard, the evidence clearly supports the jury's verdict. Evidence introduced at trial implicated Knight as an active member of a cocaine distribution ring whose core members remained basically unchanged during the approximately three-year period alleged in the indictment. Even assuming that the jury could not have found that Knight participated in the specific drug transactions occurring during the last six months of the cocaine distribution scheme, there was no evidence that Knight had withdrawn from the conspiracy or that it had terminated and a new conspiracy had begun. Since the other core members of the conspiracy and its basic operation remained unchanged, a new conspiracy did not arise simply because two former co-conspirators began to act as government agents. "To separate the drug conspiracy at issue into multiple conspiracies pertaining to each drug transaction would not only be artificial, but would distort the common goal of the conspiracy." *United States v. Adams,* 759 F.2d 1099, 1110 (3rd Cir.1985). Accordingly, Knight's assertion of error based on the

existence of multiple conspiracies has no merit.[7]

## V.

After carefully considering all of appellants' contentions, we conclude that the judgments entered pursuant to the jury's verdict should be affirmed.

AFFIRMED.

---

**7.** Contrary to the position taken in appellants' brief, at oral argument counsel for Knight contended that the evidence showed not two, but four conspiracies. While we do not feel compelled to address this contention made only at oral argument, we note that it is likewise meritless.

Knight also contends that the trial court erred in denying his motion to sever, which was based on the existence of multiple conspiracies. Clearly, the court did not abuse its discretion. *See United States v. Spoone,* 741 F.2d 680, 688 (4th Cir.1984) (denial of motion to sever reviewed under abuse of discretion standard).