891 F.2d 287
 29 Fed. R. Evid. Serv. 198
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Lamont POSTELL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alden Renard WASHINGTON, Defendant-Appellant.
 Nos. 89-5035, 89-5036.
 United States Court of Appeals, Fourth Circuit.
 Nov. 17, 1989.
 
 George Vernon Laughrun, II (Goodman, Carr, Nixon & Laughrun, on brief), Calvin Eugene Murphy (Murphy & Chapman, on brief), for appellants.
 Sara Bradkin Criscitelli (Thomas J. Ashcraft, United States Attorney, on brief), for appellee.
 Before WIDENER and WILKINSON, Circuit Judges, and JOHN A. MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Donald L. Postell and Alden R. Washington appeal their convictions in the United States District Court for the Western District of North Carolina for conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Appellants assert that the district court erred in barring on cross-examination a question concerning a witness' understanding of his plea agreement, in permitting the prosecution to ask leading questions of a government witness, in failing to remove a sleeping juror, and in finding for purposes of sentencing that appellant Washington had a supervisory or managerial role in the conspiracy. Appellants also contest the sufficiency of the evidence as to the quantity of cocaine in which they are accused of dealing. Finding each of these contentions to be without merit, we affirm the judgment of the district court.
 
 I.
 
 2
 Appellants operated a cocaine trafficking operation in which they obtained cocaine in south Florida, transported it via young female couriers to Charlotte, North Carolina, and arranged for its distribution in the Charlotte area. Proceeds from the cocaine sales were either wired to Miami or carried back by the couriers. Appellant Postell was in charge of the operation, and was responsible for obtaining the cocaine and arranging for its transport to Charlotte. Appellant Washington, Postell's cousin, supervised distribution in the Charlotte area.
 
 
 3
 Evidence was presented at trial of at least ten separate shipments of cocaine by appellants from south Florida to Charlotte. Eight shipments successfully reached their destination, including five shipments of one kilogram of cocaine each and three shipments of one-half kilogram each. The final two shipments were intercepted by law enforcement officers, and the couriers delivering the cocaine were arrested. These two shipments were of one kilogram and one-half kilogram respectively, and tested positive as cocaine in police department lab tests. One of the couriers disclosed to the police the involvement of appellants in the cocaine trafficking operation.
 
 
 4
 Appellants were indicted by a grand jury, and were convicted after a jury trial of conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Appellant Postell was sentenced to 50 years imprisonment, a $20,000 fine, and upon release a term of ten years supervision. Appellant Washington was sentenced to 14 years imprisonment, a $6,000 fine, and upon release a term of five years supervision. They now appeal.
 
 II.
 
 5
 Appellants complain that they were unable to adequately cross-examine government witness James Edward Brown concerning his understanding of his plea agreement with the government. They assert that the district court erred in sustaining an objection to their question as to what Brown's attorney had told him about his plea bargain. We find no error in the ruling of the district court.
 
 
 6
 Rather than interfering with appellants' ability to elicit information from Brown concerning his expectations for a reduced sentence, the district court actually aided appellants. When appellants were having difficulty obtaining a satisfactory answer from Brown, the court interceded and asked:
 
 
 7
 Mr. Brown, Now I understand--you have stated that your understanding is you're to tell the truth. Is it also your understanding that because of your testifying today against these defendants--the defendants in this case, that you may receive a lesser sentence [than] you would have if you had not come in and testified? Is that your understanding?
 
 
 8
 Brown replied: "Yes, sir. Yes, sir." Moreover, Brown himself testified that by the terms of the plea agreement he faced a maximum of 15 years imprisonment on the charge of possession of cocaine. The single question that the district court barred involved a privileged communication between attorney and client. Given that appellants were able to elicit fully from Brown his understanding of the plea agreement and his expectations for a reduced sentence, we cannot say that the court erred in barring inquiry into privileged information. See United States v. Dorta, 783 F.2d 1179, 1182 (4th Cir.1986).
 
 III.
 
 9
 Appellants next contend that the district court erred in permitting the prosecution to ask a number of leading questions of government witness Brenda Faye Johnson. Appellants point, for example, to the following questioning of Johnson by the prosecution:
 
 
 10
 Q: And who came to your house?
 
 
 11
 A: Donald.
 
 
 12
 Q: Donald Postell?
 
 
 13
 MR. HEWITT: Object to the leading, your Honor.
 
 
 14
 THE COURT: I'm afraid we're going to have to put up with a little bit of it with this witness.
 
 
 15
 Appellants contend that the prosecution was impermissibly filling in the gaps in Johnson's testimony. We disagree.
 
 
 16
 Federal Rule of Evidence 611(c) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.... When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Here, the leading questions were necessary to develop Johnson's testimony. The court indicated that some leading of Johnson was necessary in order for her testimony to come out. Furthermore, her disinclination to answer fully the prosecution's questions and her long-time association with appellant Postell indicate that she might fairly have been considered a hostile witness. In addition, the leading questions were few in number and related only to preliminary matters. Most importantly, the leading questions in no way reflected an attempt by the prosecution to "supply false memory" or put words in Johnson's mouth. We have previously stated that "the extent to which the use of leading questions may be indulged or limited is a matter primarily for the discretion of the trial judge and an appellate court will intervene only if there is a clear abuse of discretion." United States v. Durham, 319 F.2d 590, 592 (4th Cir.1963). Under the circumstances here, it is clear that the district court did not abuse its discretion in allowing a few preliminary leading questions.
 
 IV.
 
 17
 Appellants also contend that the district court erred in failing to remove a juror who fell asleep during trial. Appellants' argument lacks merit for several reasons. First, it is unclear from the record what the juror's status actually was. The court simply asked the juror to wake up and asked if he were alright, and the juror responded that he had been up all night. The court then informed the juror that "I'm going to have to wake you up if you do go to sleep." This leaves some question as to whether the juror actually fell asleep, or was only momentarily inattentive. Second, even if the juror was asleep, appellants never objected or requested that the juror be removed. After having been convicted by the jury, they cannot obtain a new trial by now complaining for the first time that the juror was remiss in his duties. Third, appellants fail to make any showing that the juror slept through essential portions of the trial and was unable to consider the entire case fairly. Absent such a showing, we cannot say the trial court's failure to remove the juror was erroneous. See United States v. Barrett, 703 F.2d 1076, 1083 n. 13 (9th Cir.1983).
 
 V.
 
 18
 Appellant Washington argues that the trial court erred in finding for sentencing purposes that he acted in a managerial or supervisory role in the cocaine trafficking operation. Sentencing Guideline § 3B1.1(b) states that "if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, [the offense level shall] increase by three levels." Washington argues that Postell was in charge of the operation and that he therefore could not have been the manager or supervisor. He also asserts that the sentencing hearing and the presentence investigation report failed to indicate that he supervised the requisite number of participants.
 
 
 19
 Washington's arguments lack force. As to his first contention, the fact that Postell was in charge of the operation in no way precludes Washington from being a manager. To the contrary, the Guidelines explicitly differentiate between an "organizer or leader" and a "manager or supervisor," and assess stiffer penalties against the former. The Guidelines thus clearly contemplate a "manager or supervisor" being a person such as Washington who plays a significant role in the organization but is not a lead figure. "The reason for distinguishing the various criminal participants' roles, and for classifying some as organizers, leaders, managers, or supervisors, is to assess punishment based on relative responsibility.... [O]rganizers and leaders generally are deemed more culpable than mere managers or supervisors." United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989).
 
 
 20
 As to Washington's second argument, the Guidelines do not require that the manager have supervised five or more participants, but rather only that "the criminal activity involved five or more participants." The evidence at trial clearly demonstrates, and Washington does not contest, that more than five persons were involved in this cocaine operation.
 
 VI.
 
 21
 Finally, appellants assert that the evidence at trial was insufficient to establish that they dealt in five kilograms of cocaine. They assert that the cocaine actually recovered by the police only amounted to approximately one and one-half kilograms, and that the testimony of one of the couriers as to the quantities of cocaine she carried was suspect because of her young age and her inexperience with the drug. We disagree. Not only was the courier's testimony reliable in its own right, but it was also supported by other evidence presented by the government. For example, the sizeable sum of money derived from the cocaine sales demonstrates that a substantial quantity of cocaine was involved. After careful review of all the evidence, we find it beyond question that there was substantial evidence that appellants trafficked in more than five kilograms of cocaine.
 
 
 22
 For the foregoing reasons, the judgment of the district court is
 
 
 23
 AFFIRMED.