UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN SAMUEL LEIGH, a/k/a J.R., a/k/a J.D.,

*Defendant-Appellant.*

⎫
⎬
⎭

No. 01-4699

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-00-57)

Argued: February 25, 2003

Decided: March 17, 2003

Before WILKINSON and MOTZ, Circuit Judges, and
James P. JONES, United States District Judge for the
Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Steven B. Epstein, HUNTON & WILLIAMS, Raleigh, North Carolina; Nash E. Long, III, HUNTON & WILLIAMS, Charlotte, North Carolina, for Appellant. Thomas Oliver Mucklow, Assistant United States Attorney, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, Martinsburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

John Samuel Leigh appeals his conviction and sentence for conspiracy to distribute cocaine base and for distribution of cocaine base in violation of 21 U.S.C.A. §§ 846 and 841(b)(1)(A) (West 1999). For the reasons stated below, we affirm.

I.

The Government indicted Leigh in December 2000, charging him and twenty-five co-conspirators in a sixty-five count indictment. The indictment alleged that Leigh participated in a large crack cocaine conspiracy stretching over ten years in Jefferson County, West Virginia. According to the Government, the conspiracy comprised a network of crack houses, crack dealers, drug runners, and users in the Fox Glen subdivision in Jefferson County. Principal dealers, like Leigh and his co-defendant Michael Puzey, sold crack from various crack houses in the subdivision. The Government contends that Leigh joined the conspiracy in September 1999 upon his release from prison.

Leigh and co-defendant Puzey were tried together in April 2001. After a four-day trial, the jury returned guilty verdicts as to both Leigh and Puzey on all counts charged against them. Specifically, the jury convicted Leigh on Count One, conspiracy to possess with intent to distribute and to distribute fifty grams or more of cocaine base in violation of 21 U.S.C.A. §§ 846 and 841(b)(1)(A), and Count Sixty-three, distribution of .24 grams of cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1999).

The district court sentenced Leigh to 420 months on Count One and 240 months on Count Sixty-Three, to run concurrently. Leigh

filed a timely notice of appeal with this court, contesting only his conviction and sentence on Count One, the drug conspiracy charge.

## II.

Leigh first contends that there was a fatal variance between the single conspiracy charged in Count One of the indictment and the proof offered at trial, which, in his view, only supported a finding of multiple, competing conspiracies. According to Leigh, this constituted a constructive amendment to the indictment that violated his Fifth Amendment rights, thereby providing grounds for reversal.

A constructive amendment or fatal variance occurs "[w]hen the government, through its presentation of the evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (citation omitted). Because this has the effect of changing the elements of the offense charged, it "violates the Fifth Amendment right to be indicted by a grand jury, is error *per se*, and must be corrected on appeal even when the defendant did not preserve the issue by objection." *Id.* (citation omitted).

We review such claims for sufficiency of the evidence. When assessing the sufficiency of the evidence of a criminal conviction on direct review, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942).

In this case, after reviewing the evidence offered at trial, it is clear that Leigh's fatal variance argument has no merit. As we have stated on numerous occasions, the question of "'[w]hether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals.'" *United States v. Strickland*, 245 F.3d 368, 385 (4th Cir. 2001) (quoting *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988)). The facts established here show that Leigh, Puzey, and their co-conspirators shared the same goals, employed the same methods, used the same crack houses, and worked with some of the same personnel to distribute crack cocaine in the Fox Glen subdivision.

Moreover, Leigh fails to point to any evidence of a separate conspiracy that would have undermined the jury's conclusion that there was but a single Fox Glen conspiracy. Instead, he simply attacks the Government's theory of the case, pointing to the Government's admission that this was a "chain" conspiracy, the Government's allegations that Leigh and Puzey were competitors (rather than co-conspirators), and the lack of any evidence that Leigh knew of Puzey's conspiracy. None of these arguments have any merit.

Indeed, contrary to Leigh's argument, a chain conspiracy, such as that alleged here, may constitute a single conspiracy. *See, e.g.*, *United States v. Hines*, 717 F.2d 1481, 1490 (4th Cir. 1983) (concluding that "chain" or "multi-level" conspiracies may constitute single conspiracies). In fact, drug distribution conspiracies often take the form of chain conspiracies with different co-conspirators playing different roles in the drug supply chain. In this case, the Government presented evidence at trial that specifically linked Leigh's drug distribution efforts with those of Puzey and the other Fox Glen conspirators. For example, both Leigh and Puzey dealt drugs out of Joey Breeden's house, and both supplied drugs to a smaller dealer, Michael Viands.

In addition, the fact that Leigh and Puzey "competed" for the same crack cocaine market does not support Leigh's claim of multiple conspiracies. *See Banks*, 10 F.3d at 1054 ("[T]he fact that parallel suppliers . . . serving such a [drug consumption] market may sometimes, or even always, compete for supplies or customers in serving that market does not on that account alone disprove either the existence of a single conspiracy to achieve the overall results of their several efforts, or the participation of particular ones of them in that conspiracy."). Although Leigh and Puzey may have been selling to the same customers, the evidence at trial showed that they were part of a common enterprise.

Finally, the existence of a single conspiracy does not founder on Leigh's lack of knowledge of Puzey's drug distribution efforts. As we have previously held, "[i]t is of course elementary that one may be a member of a conspiracy without knowing its full scope, or all its members." *Id.*

Accordingly, we conclude that Leigh has failed to demonstrate that a reasonable jury could not have found a single conspiracy beyond a reasonable doubt based on the evidence presented at trial.

### III.

Leigh next argues that the district court committed reversible error in denying his request for a jury instruction that would have allowed the jury to find either a single conspiracy or multiple conspiracies. Leigh would have been entitled to such an instruction only if the evidence at trial supported the existence of multiple conspiracies. *See United States v. Bowens*, 224 F.3d 302, 307 (4th Cir. 2000) ("A court need only instruct on multiple conspiracies if such an instruction is supported by the facts." (citation and internal quotation marks omitted)); *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) ("A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in separate conspiracies *unrelated* to the overall conspiracy charged in the indictment." (citation and internal quotation marks omitted)). As noted above, however, Leigh has failed to point to any evidence demonstrating that he was involved in a separate conspiracy unrelated to the Fox Glen conspiracy. *Id.* Accordingly, "the district court did not err in refusing to instruct the jury on this subject." *Bowens*, 224 F.3d at 308; *see also United States v. Dorta*, 783 F.2d 1179, 1183-84 (4th Cir. 1986).

### IV.

In addition, Leigh contends that the verdict form presented to the jury conflicted with the court's instructions as to the conspiracy, thereby creating ambiguity as to the actual drug amounts attributed to each of the defendants by the jury. Specifically, Leigh asserts that although he and Puzey each joined the conspiracy at different times and although the district court instructed the jury that it could attribute specific drug weights to a defendant only after that defendant had joined the conspiracy, the verdict form required the jury to draw one conclusion regarding drug weight that would be applied to both defendants. Thus, Leigh argues, it is possible that his conviction for fifty grams or more of cocaine base could have been based upon drug weights attributable to Puzey and Puzey's co-conspirators *before* Leigh joined the conspiracy. Such an outcome, according to Leigh,

constitutes error akin to that found in *United States v. Rhynes*, 196 F.3d 207 (4th Cir. 1999), *vacated in part on other grounds on reh'g en banc*, 218 F.3d 310 (4th Cir. 2000), and requires that we vacate Leigh's sentence and remand for re-sentencing.

Because Leigh did not object to the verdict form, we review his contentions for plain error. Fed. R. Crim. P. 52(b). In order to receive any relief under that standard, Leigh must establish (1) that there was error; (2) that the error was plain; (3) that the error affected his substantial rights; and (4) that a failure to notice the error would "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *See United States v. Olano*, 507 U.S. 725, 732-36 (1993).

After reviewing the record, we conclude that even if there was plain error here, it did not affect Leigh's substantial rights. First, during its deliberations, the jury specifically asked the district court to clarify the issue regarding the drug amounts that could be attributed to the individual defendants: "Concerning the drug weight amounts . . ., do these amounts include everyone involved in the conspiracy over the given 10 years or just the amounts involved with the defendant(s) during their possible involvement in the named conspiracy[?]" In response, the court informed the jury that it could only attribute drug weights associated with the conspiracy to each defendant *after* each defendant joined the conspiracy.

Moreover, even if we put aside the evidence of drug amounts attributed to co-conspirators during the time that Leigh was involved in the conspiracy, the Government presented ample evidence at trial of Leigh's direct involvement with quantities of crack cocaine in excess of fifty grams. Specifically, Michael Viands testified that he bought $2000 packages of crack from Leigh some fifteen to twenty times — substantially more than the threshold showing of 50 grams. At oral argument, Leigh's counsel conceded that the Viands' testimony alone would, if linked to the Fox Glen conspiracy, provide a sufficient basis for the jury to make its drug weight determination, thereby defeating any argument that the verdict form prejudiced the outcome. Thus, Leigh's argument regarding the ambiguous verdict form effectively collapses back into his argument regarding multiple conspiracies. Given that Viands himself, along with others, testified that he

(Viands) participated in the Fox Glen conspiracy, the jury had every reason to infer that Leigh's transactions with Viands were part of that conspiracy. Indeed, Leigh has presented no evidence to the contrary. Instead, he simply asserts that because Leigh first met Viands in Hagerstown, Maryland, their drug transactions must have occurred outside of the Fox Glen locale. We disagree. Accordingly, we conclude that if there was error in the verdict form it did not affect Leigh's substantial rights.

## V.

Finally, Leigh argues that the district court erred in accepting the drug amounts attributed to him in his Presentence Report (PSR). Because Leigh failed to object to the PSR calculation, we review for plain error. Fed. R. Crim. P. 52(b).

The district court adopted the PSR's finding that Leigh was responsible for 298.6 to 498.89 grams of cocaine base in relation to the Fox Glen conspiracy. These quantities included only those drug amounts that were directly attributable to Leigh based on the evidence at trial rather than the total drug amounts attributable to the conspiracy as a whole during the time that Leigh was involved.

Nevertheless, Leigh maintains that the district court committed plain error here. Relying once again on his multiple conspiracy argument, Leigh contends that the drug weight amount in the PSR as accepted by the district court included drug amounts from transactions unrelated to the indicted Fox Glen conspiracy. He argues that the drug amounts related to his transactions with Michael Viands, which the PSR calculated as 276 to 460 grams and which accounted for the vast majority of the total amounts attributed to him in the PSR, had nothing to do with the Fox Glen conspiracy and thus could not be used to calculate drug amounts for relevant conduct. This argument fails for the reasons noted previously. Accordingly, we conclude that the district court did not err in accepting the PSR's calculation of drug amounts.

## VI.

For the reasons set forth within, the judgment of the district court is affirmed in all respects.

*AFFIRMED*